# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

KATHRYN RODRIGUEZ, *individually*
*and on behalf of similarly situated persons,*

    Plaintiff,                              Case No. 1:18-cv-240

v.                                       **HON. JANET T. NEFF**

HIRSHBERG ACCEPTANCE CORP.,

    Defendant.

_____

KATHRYN RODRIGUEZ, individually, and
KATHRYN RODRIGUEZ, on behalf of similarly
situated persons,

                                     Case No. 1:20-cv-877

    Plaintiff,

                                     **HON. JANET T. NEFF**

v.

HIRSHBERG ACCEPTANCE CORP., and
MODERN FINANCIAL SERVICES, CORP.,

    Defendants.

_____/

## PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT OF THE CONSOLIDATED CASES

Plaintiff Kathryn Rodriguez ("Plaintiff"), through her counsel, without opposition by Defendants, hereby moves this Court for entry of an order preliminarily approving a class settlement in these consolidated actions.   The

parties, with the assistance of Magistrate Judge Berens, have reached a proposed class-wide settlement.

WHEREFORE, Plaintiff hereby moves this Court to enter a preliminary approval order substantially in the form of Appendix 2 to Exhibit A, attached, that:

- Preliminarily approves the Class Action Settlement Agreement, subject to approval after a final fairness hearing;

- Provisionally certifies the Settlement Class under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3);

- Provisionally appoints Kathryn Rodriguez as representative of the Settlement Class;

- Provisionally appoints Curtis C. Warner as Class Counsel;

- Authorizes and approves the promulgation of Class Notice as detailed in the Settlement Agreement, Appendix 1 to Exhibit A, attached; and

- Schedules a Final Fairness Hearing date and time no less than 100 days from the date of filing of this Motion.

In support of this Motion, Plaintiff submits the attached Memorandum of Law in Support.

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL, AND CERTIFICATION OF SETTLEMENT CLASS

Plaintiff Kathryn Rodriguez ("Plaintiff") respectfully submits this memorandum of law in support of her unopposed motion for preliminary approval of her settlement with Defendants.

# I.    INTRODUCTION

Plaintiff, on behalf of herself and a Settlement Class[1] of similarly situated consumers on whose behalf she has vigorously prosecuted this class action for over five years, seeks this Court's preliminary approval of a proposed Class Settlement.

If the Settlement is approved by this Court, Defendants will fund a Settlement Fund for the benefit of the class.  In addition, Defendant Hirshberg Acceptance Corp. ("Hirshberg") has agreed to injunctive relief in the form of recalculating the rate of interest it will charge on certain judgments.  The class contains 62 members.  On a fully-diluted basis, the proposed Settlement Fund would compensate each class member in excess of $56, which, according to Hirshberg's representation of its net-worth, is more than the maximum recovery under the Fair Debt Collection Practices Act ("FDCPA") and more than the amount of statutory damages recoverable for a non-willful violation of the Michigan Regulation of Collection Practices Act ("RCPA").  The Settlement, which resulted from arm's-length negotiations overseen by a Magistrate Judge, after the parties had engaged in extensive motion and appellate practice, represents a tangible monetary recovery for the class and provides equitable relief as to the alleged excess amount of interest being added to Hirshberg's judgments.

---

[1] Capitalized terms used in this brief are defined in the parties' Class Action Settlement Agreement ("Settlement Agreement" or "Agreement"), Exhibit A, attached.

Overall, the proposed Settlement is within the range of what is fair, reasonable and adequate under the governing standards. All prerequisites for preliminary approval of the Settlement have been met, and the notice protocol satisfies the requirements of due process and Rule 23. This Court should therefore preliminarily approve the Settlement.

## II.    BACKGROUND

### A. The Litigation

These two consolidated cases involve the same claim under the FDCPA. Additionally, there is a third related case involving claims under state law, the RCPA, with the Court declined to exercise supplemental jurisdiction over, is currently pending before the Michigan Supreme Court on Plaintiff's petition for leave to appeal. On March 7, 2018, Plaintiff initiated Case No. 1:18-cv-240, seeking class certification on several theories of liability under the FDCPA and RCPA, primarily that Hirshberg added an amount of interest to the state court judgment Hirshberg had obtained against Plaintiff more than the permissible statutory rate of interest allowed under MCL 600.6013(8).

This Court *sua sponte* declined to exercise jurisdiction over the state law RCPA claims. On November 8, 2018, this Court *sua sponte* administratively closed this case pending appeal if any, of *Vanderkodde v. Mary Jane M. Elliott, P.C.,* Case No. 1:17-cv-203 (W.D. Mich.) that presented a similar legal theory advanced by

Plaintiff involving post-judgment garnishments to which a sister court in this District held was barred by the *Rooker-Feldman* doctrine. (ECF No. 27). This Court declined to reopen Case No. 1:18-cv-240 as untimely under Rule 6. (ECF No. 35). When this Court did not grant Plaintiff's motion to administratively reopen the case, Plaintiff filed a new case in Michigan state court, adding Defendant Modern Financial Services, which is an entity that is related to Hirshberg. Defendants removed the case to this Court, which assigned it Case No. 1:20-cv-877. The Court in the 20-cv-877 case again declined to exercise supplemental jurisdiction over the RCPA claims, which were subsequently remanded to the state court. As to the putative class members only, the RCPA claims are currently the subject of an appeal before the Michigan Supreme Court on the construction of Michigan Court Rule 3.501(A)(5) after the Ionia County Circuit Court found that MCR 3.501(A)(5) barred a putative class action under the RCPA as the Act provided a minimum penalty.

The FDCPA claim in Case No. 1:20-cv-877 was dismissed with prejudice under the doctrine of *res judicata* given the Court's denial to administratively reopen the 1:18-cv-240 case On appeal, the Sixth Circuit reversed this Court's Order denying Plaintiff's motion to reopen the case, Case No. 1:18-cv-240 and reversed the dismissal with prejudice of the federal claim in Case No. 1:20-cv-877, remanding the FDCPA claims to this Court.

## B. The Settlement

After vigorously litigating the matter for over five years, with extensive motion and appellate practice, Plaintiff and Defendants engaged in settlement discussions, with the assistance of Magistrate Judge Berens, to determine whether a resolution for the Litigation could be reached. Those discussions yielded a settlement that provides, *inter alia*, for the creation of a Settlement Fund in the amount of $3,500 to pay the claims of the Settlement Class of 62 persons, in exchange for dismissal of the Litigation with prejudice and certain releases from Plaintiff and the proposed Class to Defendants. Defendants have stipulated to certification of the Class under Federal Rule of Civil Procedure 23 for purposes of the Settlement only. All terms of the Settlement are set forth in the Settlement Agreement attached as Exhibit A.

Preliminary approval of the Settlement is appropriate. Proposed class counsel believe that the claims asserted in the Litigation have merit, but have concluded that it is in the best interests of the Settlement Class to receive a settlement payment now, in order to avoid the uncertainties and delays of continued litigation and potential appeals. Plaintiff, relying on her counsel's advice, is in agreement to settle the claims of the Settlement Class and herself. Thus, Plaintiff and Defendants, in good faith and at arm's length, negotiated the Settlement Agreement.

Accordingly, Plaintiff respectfully requests that the Court enter the proposed order attached as Appendix 2 to Exhibit A, which accomplishes the following:

- Preliminarily approves the Class Action Settlement Agreement, subject to approval after a final fairness hearing;

- Provisionally certifies the Settlement Class under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3);

- Provisionally appoints Kathryn Rodriguez as representative of the Settlement Class;

- Provisionally appoints Curtis C. Warner as Class Counsel;

- Authorizes and approves the promulgation of Class Notice as detailed in the Settlement Agreement, Appendix 1 to Exhibit A, attached; and

- Schedules a Final Fairness Hearing date and time no less than 100 days from the date of filing of this Motion.

## III.    PROPOSED SETTLEMENT

### A. Settlement Class

The Settlement Class consists of the 62 people who were served with a writ of garnishment in a Michigan state court collection proceeding, where Hirshberg Acceptance Corp. was the judgment creditor, in the year prior to the filing of the complaint in *Rodriguez v. Hirshberg*, Case No. 1:18-cv-240 in the U.S. District Court for the Western District of Michigan, where the post-judgment interest charged exceeded the Michigan statutory interest rate.   This class is easily ascertainable from Defendants' records.

### B. Benefits

Defendants will pay $3,500 to establish a common fund for the benefit of the Class. Settlement Class Members would be mailed checks for their *pro rata* share of the Settlement Fund, which would amount to a minimum of $56.45 for each member who does not exclude themselves from the Settlement. If any checks remain uncashed after 90 days, the uncashed funds would be given to the Michigan Poverty Law Program, a non-profit organization that provides support services statewide for local legal aid programs. An additional $1,250 would be paid to Plaintiff for her role as Class Representative in the Litigation. Further, Defendants agree not to oppose a petition for Class Counsel's reasonable attorney fees and costs of $65,000 to compensate Class Counsel for attorney fees and litigation expenses. The award of fees, costs and expenses to Class Counsel shall be in addition to and shall not in any way reduce the settlement amounts to be provided to the Settlement Class Members.

Hirshberg will also agree to injunctive relief in the form of recalculating the rate of interest due on judgments it has against members of the Settlement Class as well as ceasing to charge any rate of interest other than the statutory rate on any judgment for which Hirshberg indicates the debt was not based on a note. Injunctive relief is not available under the FDCPA.

**C.   Notice**

The proposed Settlement would require counsel for Defendants to cause a notice to be disseminated to all Settlement Class Members. The Class Notice would be sent by first class mail, no later than 30 days after the entry of the Preliminary Approval Order, to the last known address of all Settlement Class Members. If any letter is returned by the U.S. Postal Service, Defendants within three business days would skip trace and send another Class Notice to the class members to each address returned for that class member. Defendants will bear all costs of administration of the Settlement.

### D. Requests for Exclusion

The Class Notice would advise the Settlement Class Members of their right to opt out of the Settlement Class and the procedures for doing so. Settlement Class Members may opt out of the Settlement by submitting a written request to counsel for Defendants, Class Counsel or the Court, emailed or postmarked no later than 60 days after notice is sent to the class member.

### E. Objections

The Class Notice would also advise the Settlement Class Members of their right to object to the Settlement and the procedures for doing so. Any class member who does not request exclusion from the class may object to the Settlement by submitting a written objection to counsel for Defendants, Class Counsel or the Court, emailed or postmarked no later than 60 days after notice is

sent to the class member. If a class member intends to appear at the hearing on the Motion for Final Approval to present evidence in support of his or her objection, he or she may submit written notice of his or her intent to appear by filing the notice of intent to appear with the Court or submitting it to Counsel for Defendants or Class Counsel no later than 60 days after notice is sent to the class member.

### F.     Service Award for Class Representative

Class counsel will seek a service award of $1,250 for Plaintiff.

### G.     Attorney Fees and Costs

Class counsel will apply to the Court by motion for an award of attorney fees and costs in the amount of $65,000.

### H.     Releases

If approved, the Settlement sets forth the releases that Plaintiff and the Settlement Class are providing to Defendants.

## IV.     ARGUMENT

### A. The Settlement Represents a Fair, Reasonable and Adequate Resolution of This Dispute, and All Factors Warrant Preliminary Approval

The Settlement is within the range of a fair and reasonable resolution of this dispute and is worthy of notice to and consideration by the Class. It will provide financial relief to Class Members, will eliminate the burden, uncertainty and risk of continued litigation, and will provide notice to the Settlement Class members so

that they can make an informed decision regarding the claims asserted on their behalf.

The law favors the settlement of class action litigation. *See UAW v. General Motors Corp.,* 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions"); *Does 1-2 v. Déjà vu Services, Inc.*, 925 F.3d 886, 899 (6th Cir. 2019) (citation and internal quotation marks omitted) ("there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources"); and *Berry v. School Dist. Of City of Benton Harbor*, 184 F.R.D. 93 (W.D. Mich. 1998) (citation omitted) ("[i]t is beyond question that the law generally favors the settlement of class actions"). However, "[t]he claims, issues, or defenses of a certified class may be settled... only with the court's approval." Fed. R. Civ. P. 23(e).

To warrant district court approval, a class action settlement must be "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2); *UAW v. General Motors,* 497 F.3d at 631 ("Before approving a settlement, the district court must conclude that it is fair, reasonable and adequate."). "A district court's decision to approve a settlement is discretionary and must depend on a careful consideration of the facts of the particular case." *Berry*, 184 F.R.D. at 98 (citation omitted). The district court should approve a class settlement if, following a fairness hearing, it

determines that "the proposed settlement is fair, reasonable and adequate." *Id.* at 97 (citations and internal quotation marks omitted).

"A settlement on its face represents a bargained give and take between litigants that is presumptively valid." *Berry*, 184 F.R.D. at 97. "The court's role in evaluating such agreements is properly limited to the minimum necessary to protect the interests of the class and the public." *Id.* (citation and internal quotation marks omitted). "The court's review must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.* (citation and internal quotation marks omitted). "Unless it appears that the compromise embodied in the agreement is illegal or tainted with collusion, the court must order that notice be given to the class of the proposed agreement and must order a fairness hearing." *Id.* (citation omitted).

The Sixth Circuit has identified seven factors that "guide the inquiry" to be undertaken by the district court:

(1) The risk of fraud or collusion;

(2) the complexity, expense and likely duration of the litigation;

(3) the amount of discovery engaged in by the parties;

(4) the likelihood of success on the merits;

(5) the opinions of class counsel and class representatives;

(6) the reaction of absent class members; and

(7) the public interest.

*UAW v. General Motors,* 497 F.3d at 631, citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir. 1992) and *Williams,* 720 F.2d at 922-923 (6th Cir. 1983); *see also Berry,* 184 F.R.D. at 98. "The district court enjoys discretion in assessing the weight and applicability of these facts." *Granada Invest, Inc..,* 962 F.2d 1203, 1205-1206 (6th Cir. 1992); *see also Berry,* 184 F.R.D. at 98.

A preliminary application of these factors to this case demonstrates that the proposed settlement is within the range of what is fair, adequate and reasonable. The Settlement in this case provides benefits to the Class, as every member of the Class who does not opt out will receive notice, the ability to opt out, and if they choose to remain in the Class, monetary compensation from the Settlement Fund. Plaintiff and her counsel believe their claims are strong, but they are also aware that Defendants have denied the material allegations of the Complaint and have raised several legal defenses, any of which, if accepted by the Court, would result in Plaintiff and the proposed Class receiving no payment or equitable relief whatsoever, unless reversed in yet another appeal  Accounting for these realities, and recognizing the risks inherent in any litigation, the settlement relief represents a favorable result for the Class.

**1. The Settlement was negotiated at arm's length**

Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary. *Granada Invest, Inc.*, 962 F.2d at 1205 ("Absent evidence of fraud or collusion, such settlements are not to be trifled with"); *see also Berry,* 184 F.R.D. at 97. Courts also consider whether the settlement was reached with the assistance of a mediator. *See, e.g., Dallas v. Alcatel-Lucent USA, Inc.*, No. 09-14596, 2013 WL 2197624, at *8-9 (E.D. Mich. May 20, 2013).

Here, there is no suggestion of fraud or collusion. This is a class action based upon an alleged interest-rate-charging practice that may be a violation of the FDCPA and RCPA and that affects 62 people. With this Settlement, negotiated at arm's length with the assistance of Magistrate Judge Berens, Defendants are creating a Settlement Fund to pay the claims of those people. Furthermore, the parties and their counsel have civilly but vigorously disagreed over issues in dispute in the Litigation prior to settling the case. The process was entirely at arm's length, with each party representing and pursuing its own interests, and exercising independent judgment. Accordingly, this factor favors preliminary approval.

**2. The Settlement will provide prompt payment to the Class and avoid the risks attendant to complex litigation**

Whatever the relative merits of the parties' legal positions, there is no risk-free, expense-free litigation. Barring settlement, all Class Members would be subject to the uncertainty, risk and delay attendant to continued litigation, which ultimately might leave them without any recovery. *See Déjà vu Services, Inc.*, 925 F.3d at 899. Had the parties not reached a settlement, they would have had to undertake discovery and engage in yet more motion and more than likely further appellate proceedings. Furthermore, it is anticipated that any continued litigation will require large expenditures of time and resources of the parties and the Court. Thus, this factor also warrants approval of the Settlement Agreement, which will provide prompt payment to the Class.

### 3. The facts were sufficiently known to inform Plaintiff's litigation risk assessment and the settlement discussions

Defendants have made material representations of the class size and its net worth. There are no material factual disputes as to the merits of the claims where the key issue in these cases is the legal question of whether Hirshberg charged more than the permissible statutory rate of interest on the principal amount of its judgment. *See* MCL 600.6013(8). Overall, the parties have recognized that there are risks and uncertainties for both sides in continued litigation. After over five years of vigorous trial court and appellate litigation, the Hirshberg has made representations as to its net worth and the Class size to permit their informed assessment of the litigation and settlement, sufficient to inform the Court that their

dispute is genuine and sufficient to support the conclusion that the settlement is reasonable.

### 4. The likelihood of success factor

The fairness of a class action settlement "turns in large part on the bona fides of the parties' legal dispute." *UAW v. General Motors,* 497 F.3d at 631. In assessing the parties' legal dispute, the district court's task "is not to decide whether one side is right or even whether one side has the better of these arguments.... The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *Id.* at 632.

In assessing the parties' dispute and weighing the likelihood of Plaintiff's success on the merits if the litigation continues, versus the benefits to Plaintiff of the Settlement, the ultimate question for the district court is only whether the interests of the class as a whole are better served if the litigation is resolved by the Settlement rather than pursued. *Berry*, 184 F.R.D. at 98. Although assessing this factor requires some evaluation of the merits of the dispute, the district court need not resolve the dispute and must refrain from reaching conclusions on issues which have not been fully litigated. *Id*. (citation omitted).

Here, consideration of this factor leads to the conclusion that there is indeed a legitimate dispute and that resolution of this lawsuit by the Settlement better serves the Class than continued litigation. The core of the parties' dispute is

whether Hirshberg charged more than the statutory rate of interest allowed under Michigan's post judgment interest statute. The parties, having researched the relevant factual matters and law, have opposing views on this question. In addition, the parties recognize that continued litigation would be a "zero sum" undertaking, in which one party is likely to achieve complete victory while the opposing party experiences complete defeat, because the parties' core positions are irreconcilable. Needless to say, this litigation may be protracted for another decade.

Thus, since there is a dispute, the outcome of continued litigation is uncertain, and continued litigation would carry substantial risks for both sides, these circumstances militate in favor of a settlement that ends uncertainty, eliminates risk, and provides significant benefit to each side and to the Class as a whole. Again, in this context the Court need not and should not decide the merits of the case or resolve the unsettled legal questions it presents. *See Berry*, 184 F.R.D. at 98. It is sufficient to warrant approval of the Settlement should the Court determine that the Settlement Agreement is a rational and salutary resolution of contested uncertain litigation.

### 5. The judgment of counsel factor

"[T]he court generally will give deference to plaintiffs' counsel's determination to settle a case." *Id.* at 104. Here, Plaintiff's counsel, as well as

Defendants' counsel, both of whom have extensive experience in litigation such as this, share the view that the settlement is within the range fair, reasonable and adequate. Thus, this factor also supports approval of the Settlement Agreement.

### 6. The fairness factor

While district courts may scrutinize settlements to ensure that the relief enjoyed by absent class members is equitable relative to that received by named class members and their attorneys, there is nothing in the Settlement Agreement that improperly benefits attorneys or favors the class representative. To the contrary, the Settlement Agreement is even-handed in its treatment of class members, does not improperly favor Plaintiff, and reasonably provides for class counsel fees and expenses.

Plaintiff is given no improper consideration or advantage under the Settlement Agreement. Rather, she will merely receive $1,250 to compensate her for her role as the class representative in the Litigation which including attending a settlement conference. All other Class Members will receive an equal portion of the Settlement Fund. In addition, the Settlement Agreement provides for class counsel fees based solely on the lodestar calculation, subject to Court approval. There is no provision for a premium "multiplier" to enhance fees or for fees computed as a percentage of the settlement amount. Thus, the treatment of the Class Members, Plaintiff and Class Counsel under the Settlement Agreement is

within the range of what is fair, reasonable and adequate.  This factor, too, favors settlement.

### 7.  The public interest factor

The settlement of what likely would otherwise be protracted and sharply-contested "zero sum" litigation is in the public interest.  The settlement benefits the parties and simultaneously serves the public interest in achieving certainty for Class Members and the defendant companies..  It also advances the public interest to resolve disputes in federal courts with the maximum possible expediency and efficiency.  *See Does 1-2 v. Déjà vu Services, Inc.*, 925 F.3d 886, 899 (6th Cir. 2019) (citation and internal quotation marks omitted) ("there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources"); *Berry*, 184 F.R.D. at 106 ("settlement fosters the goal of certainty, finality and economy, which lie at the heart of our general preference for settlement of class actions").  The "public interest" factor, therefore, also favors approval of the Settlement.

### B.  The Proposed Class Notice Is Adequate

Under Federal Rule of Civil Procedure 23(c)(2), class members are entitled to notice of any proposed settlement and an opportunity to object or opt out before it is finally approved by the Court.  The advisory committee note to Rule 23 states

that the "mandatory notice pursuant to subdivision (c)(2)… is designed to fulfill requirements of due process to which the class action procedure is of course subject." Fed. R. Civ. P. 23(d)(2) advisory committee's note. When certifying a settlement class under Rule 23(b)(3), the substance of the notice to the settlement class must describe in plain language the nature of the action, the definition of the class to be certified, and the class claims and defenses at issue. Furthermore, the notice must explain that settlement class members may enter an appearance through counsel if so desired, that class members may request to be excluded from the settlement class, and that the effect of a class judgment shall be binding on all class members. See Fed. R. Civ. P. 23(c)(2)(B). In addition to the substance of the notice, the manner of dissemination must also satisfy Rule 23 and due process, which requires that the class receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

The proposed Class Notice satisfies both the substantive and manner of distribution requirements of Rule 23 and due process. As set forth in § III(C), *supra*, the Settlement Agreement contemplates a notice plan designed to reach as many potential settlement class members as possible. Defendants will send direct written notice to the 62 settlement class members by U.S. Mail within 30 days after

the entry of the preliminary approval order. As such, the proposed Class Notice comports with Rule 23 and the requirements of due process.

### C. The Court Should Grant Class Certification for Settlement Purposes

For settlement purposes only, the parties have agreed that the Court may make preliminary findings and enter an order granting provisional certification of the Class, and appoint Plaintiff and her counsel to represent the Class. "The validity of use of a temporary settlement class is not usually questioned." Conte & Newberg, 4 *Newberg on Class Actions*, § 11:22 (4th Ed. 2002). The *Manual for Complex Litigation* (Fourth) § 21.612 explains the benefits of settlement classes:

> Settlement classes – cases certified as class actions solely for settlement – can provide significant benefits to class members and enable the defendants to achieve final resolution of multiple suits. Settlement classes also permit defendants to settle while preserving the right to contest the propriety and scope of the class allegations if the settlement is not approved and, in Rule 23(b)(3) actions, to withdraw from the settlement if too many class members opt out. An early settlement produces certainty for the plaintiffs and defendants and greatly reduces litigation expenses.

Prior to granting preliminary approval of a class action settlement, the Court should determine that the proposed settlement class is a proper class for settlement purposes. *Id.* at § 21.632; *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). A class may be certified under Rule 23(a) only if "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative

parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1079-1083 (6th Cir. 1996). In addition, a plaintiff must demonstrate one of the three provisions of Rule 23(b). *Amchem*, 521 U.S. at 614; *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 n. 6 (6th Cir. 1998). Here, Plaintiff seeks certification of the Class under Rule 23(b)(3), which requires that common questions of law or fact predominate, and that maintaining the suit as a class action is superior to other methods of adjudication. *See Amchem*, 521 U.S. at 615-616; *In re American Medical Systems*, 75 F.3d at 1084. In this case, the Class meets all of the applicable certification requirements. For settlement purposes only, the Settlement Class is submitted for certification under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The Class is defined in the Settlement Agreement and also appears in § III(A), *supra*.

### 1. The Rule 23(a) factors are met

#### a. The Class is sufficiently numerous, and joinder is impracticable

Numerosity is met where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no strict numerical test for determining impracticability of joinder. *Senter v. General Motors Corp.,* 532 F.2d 511, 523 n. 24 (6th Cir. 1976). Rather, "[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute

limitations." *General Tel. Co. v. EEOC,* 446 U.S. 318, 330 (1980). "While not an absolute rule, it is generally accepted that a class of 40 or more members is sufficient to establish numerosity." *Appoloni v United States*, 218 F.R.D. 556, 561 (W.D. Mich.), amended 219 FRD 116 (W.D. Mich. 2003) (*citing Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1 995) (stating that "numerosity is presumed at a level of 40 members") (*citing* 1 Newberg On Class Actions, 2d, § 3.05 (1985 ed.)).

Here, the proposed Class includes 62 people from across Michigan. This Class is sufficiently numerous, rendering joinder impracticable.

### b.  The Class shares common issues of law and fact

The commonality requirement of Rule 23(a) requires Plaintiff to show that "there are questions of law or fact common to the issue." Fed. R. Civ. P. 23(a)(2). A common question of law or fact will suffice. *See Powers v. Hamilton Cnty. Pub. Defender Comm'n,* 501 F.3d 592, 619 (6th Cir. 2007). Plaintiff is also required to "show that class members have suffered the same injury." *In re Whirlpool Corp. Front–Loading Washer Products Liab. Litig.,* 722 F.3d 838, 852 (6th Cir. 2013) (citations omitted). Thus, Plaintiff's "claims must depend upon a common contention... of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *See id.* (citations omitted).

The commonality inquiry "focuses on whether a class action will generate common answers that are likely to drive resolution of the lawsuit." *Id.* (citations omitted); *see also Fallick v. Nationwide Mut. Ins. Co.,* 162 F.3d 410, 422 (6th Cir. 1998) ("The interests and claims of the various plaintiffs need not be identical. Rather, the commonality test is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members"); *Sprague v. Gen. Motors Corp.,* 133 F.3d 388, 397 (6th Cir. 1998) (finding that a common question satisfies the commonality test only if it advances the litigation).

The commonality element has been satisfied in this case. The class proposed consists of every person whom Hirshberg served with a writ of garnishment in a Michigan state court collection proceeding during the settlement period, where the interest charged exceeded the statutory rate. Thus, the key issue in this case – whether Hirshberg added to the judgment principal more than the allowable statutory rate of interest is common to all members of the class.

### c. Plaintiff's claims are typical of the Class

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."

> Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff. Thus, a plaintiff's claim is typical if it arises from the

same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.

*In re American Medical Systems,* 75 F.3d at 1082 (footnote and quotation omitted).

The typicality requirement focuses on the type of injury suffered by the class members and the interests of the various class members. *See Senter,* 532 F.2d at 525.

Plaintiff and the proposed Class allege that Hirshberg improperly charged post-judgment interest in excess of the statutory rate.  As a result of this alleged conduct, Plaintiff and the proposed Class are entitled to be compensated. Accordingly, Plaintiff, by pursuing her own claim, will advance the interests of the proposed Class in satisfaction of Rule 23(a)(3).

### d.  Plaintiff and her counsel are adequate representatives

The final Rule 23(a) prerequisite requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The Sixth Circuit has articulated two criteria for determining adequacy of representation: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter,* 532 F.2d at 525 (citation omitted); *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir. 1977) (Rule 23(a)(4) tests "the experience and ability of

counsel for the plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent"). The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members.

In the case at hand, Plaintiff's interests are entirely representative of and consistent with the interests of the proposed Class – Hirshberg charged all of them post-judgment interest in excess of the statutory rate – and her pursuit of this matter demonstrates that she has been and will remain a zealous advocate for the Class. Similarly, proposed Class Counsel, Curtis C. Warner, has extensive experience in litigation under the FDCPA and RCPA. Mr. Warner's declaration of his experience is attached at **<u>Exhibit B</u>**. Accordingly, the parties agree that Mr. Warner will adequately represent the proposed Class.

### 2. The Rule 23(b)(3) factors are met

#### a. A class action is a superior method of adjudicating this dispute

Federal Rule of Civil Procedure 23(b)(3) requires that the court find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The rule is designed to "achieve economies of time, effort, and expense, and

promote... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (citation omitted).

To determine whether a class action is the superior method for fair and efficient adjudication, the district court should consider the difficulties of managing a class action. *Beattie v. CenturyTel, Inc.,* 511 F.3d 554, 567 (6th Cir. 2007). The district court should also compare other means of disposing of the suit to determine if a class action "is sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action and to assume the risk of prejudice to the rights of those who are not directly before the court." 7AA Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1779 (3rd Ed. 2010); *see also Newberg, supra,* § 4:27 (identifying possible alternatives to the class action device such as "joinder, intervention, consolidation, a test case, and an administrative proceeding"). Additionally, the court should consider the value of individual damage awards, as small awards weigh in favor of class suits. *Beattie,* 511 F.3d at 567; *see also Amchem,* 521 U.S. at 616 (explaining that when individual class members have large stakes in the outcome and the ability to pursue a remedy alone, their individual interests weigh against a Rule 23(b)(3) action).

"[C]ases alleging a single course of wrongful conduct are particularly well-suited to class certification." *Powers,* 501 F.3d at 619; *see also Sterling v. Velsicol Chemical Corp.,* 855 F.2d 1188, 1197 (6th Cir. 1988) (acknowledging an "increasingly insistent need" to certify class actions for lawsuits arising out of a "single course of conduct"). Where many individual inquiries are necessary, a class action is not a superior form of adjudication. *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 631 (6th Cir. 2011). However, where a threshold issue is common to all class members, class litigation is greatly preferred. *Daffin v. Ford Motor Co.,* 458 F.3d 549, 554 (6th Cir. 2006) ("Permitting individual owners and lessees of 1999 or 2000 Villagers to litigate their cases is a vastly inferior method of adjudication when compared to determining threshold issues of contract interpretation that apply equally to the whole class").

This case is particularly well-suited for class treatment. The claims of Plaintiff and the proposed Class involve identical alleged violations of the FDCPA and RCPA. Absent a class action, most members of the Class would find the cost of litigating the claims to be prohibitive. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (a class action is the superior method of proceeding when it allows the plaintiffs to pool claims that would be uneconomical to litigate individually). It is thus unlikely that individuals would invest the time and expense

necessary to seek relief through individual litigation.  Nor have any other members of the Class realized that Hirshberg was adding an amount of interest in excess of Michigan's complicated bi-annual post-judgment interest rate calculation.  Further, neither Plaintiff's incentive compensation nor Class Counsel's fees come out of the Settlement Fund.

Moreover, because the Litigation will now settle, the Court need not be concerned with issues of manageability related to trial.  When "confronted with a request for settlement only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems… for the proposal is that there be no trial."  *Amchem*, 521 U.S. at 620.  As indicated, a class action is the superior method of resolving claims if it will "achieve economies of time, effort, and expense, and promote… uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  *Id.* at 615.  Accordingly, a class action is the superior method of adjudicating this action.

### b. Common questions of law or fact predominate over questions affecting only individuals

The focus of the predominance requirement is whether the proposed class is sufficiently cohesive to warrant adjudication by representation.  *Id.* at 623.  "To satisfy the predominance requirement in Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus

applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *Beattie*, 511 F.3d at 564 (citations omitted).

In this case, the central issue common to every member of the Class is whether Hirshberg added to the judgment principal interest in excess of the statutory rate. Thus, the common issue resulting from Hirshberg's alleged conduct predominates over any individual issues that may exist, and the proposed Class should be certified.

### D. Counsel for Plaintiff Should Be Appointed as Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel… [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must consider counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

As described earlier, proposed class counsel Curtis C. Warner has diligently investigated Plaintiff's claims and the feasibility of class certification, and has devoted and will continue to devote substantial time and resources to the Litigation. As discussed earlier, Mr. Warner has extensive experience in litigation under the FDCPA and RCPA. He also has in-depth knowledge of the law, having

been involved in other similar litigation. **Exhibit B**. Accordingly, the Court should appoint Mr. Warner to serve as class counsel for the proposed Class pursuant to Rule 23(g).

## IV.    CONCLUSION

Plaintiff Kathryn Rodriguez respectfully requests that the Court: (1) certify the settlement class; (2) appoint Kathryn Rodriguez as the settlement class representative; (3) appoint Curtis C. Warner as class counsel; (4) preliminarily approve the proposed Settlement Agreement; (5) approve the form and methods of the proposed Class Notice; (6) and grant such further relief as the Court deems reasonable and just.

Respectfully submitted,

/s/ Curtis C. Warner
Curtis C. Warner (P59915)
85 Denison Parkway E. #186
Corning, NY 14830
(607) 438-3011
cwarner@warner.legal
Attorney for Plaintiff